**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO.  1:21-cv-10596-IT

| | |
|---|---|
| TRICIA THOMAS<br>        Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF BOSTON, | ) |
| BOSTON POLICE DEPT., | ) |
| OFFICER MARTIN J. HEDDERMAN, Individually | ) |
| and as employee of BOSTON POLICE DEPT., | ) |
| OFFICER BRENDAN E. CAVANAUGH, Individually | ) |
| and as employee of BOSTON POLICE DEPT., | ) |
| LIEUTENANT SEAN P. SMITH, Individually | ) |
| and as employee of BOSTON POLICE DEPT., | ) |
|         Defendants. | ) |

<u>**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>
<u>**PLAINTIFF'S SUBSTITUTE COMPLAINT**</u>

NOW COMES the Plaintiff, Tricia Thomas (hereinafter "Plaintiff"), requesting that this

court deny the Defendant's Motion to Dismiss Plaintiff's Substitute Complaint pursuant to Fed.

R. Civ. P. 12(b)(6).  The Plaintiff has sufficiently alleged a <u>Monell</u> claim with respect to 42

U.S.C. § 1983 and has provided enough evidence to support a negligent infliction of emotional

distress (NIED) cause of action in both her complaint and letter of presentment.  Furthermore,

the Plaintiff has appropriately drafted her letter of presentment to support Counts VIII and IX of

her Complaint.

**I.      FACTS AND BACKGROUND**

The Plaintiff, Tricia Thomas, is a single mother who owns a dwelling at 15 Centerville

Park, Boston, MA.  Pl.'s Sub. Compl. ¶ 11.  On Mother's Day of 2018 (May 13), she called the

police to report a disturbance caused by her brother who was trying to gain unwanted access to

1

her unit. Id. at ¶¶ 11, 13.  Officers Hedderman and Cavanaugh arrived and began to make

racially prejudicial comments to Ms. Thomas, such as: "You don't own no house," and "How

you own this house?" Id. at ¶ 14.

Later in the day, Ms. Thomas's sister and brother-in-law attempted to gain unwanted

access to Ms. Thomas's unit, threatening her with grave physical harm if she failed to do so. Id.

at ¶ 15.  Despite Ms. Thomas's rejection of their entry due to feelings of imminent danger that

they imposed, Ms. Thomas's sister phoned the police and lied, stating that there was a "black

woman on the porch with a gun." Pl.'s Sub. Compl. ¶ 16.  Officers Hedderman and Cavanaugh

returned to the dwelling and immediately pushed her through the front door. Id. at ¶ 17.  After

this they carried her outside, placed her face down, and handcuffed her in front of her two minor

sons on Mother's Day. Id. at ¶ 20.

The incident was captured on video and shows the officers acting with excessive force

and arresting Ms. Thomas on a charge of elder abuse without probable cause. Id. at ¶ 18, 22.

The officers did so after phoning Sergeant Smith who advised them to arrest her on that charge.

Pl.'s Sub. Compl. ¶ 21-22.  Ms. Thomas was not read her Miranda rights at any point in time.

Id. at ¶ 24.  The use of excessive force continued when she was brought to the C-11 precinct and

placed in a cell where the officers ripped beads and hair out of her head, broke her gold bracelet

and caused bruising to her wrist and ankles. Id. at ¶ 24, 26.  The officers again contacted

Sergeant Smith when it was time to process Ms. Thomas. Id. at ¶ 25.  After placing her back in

her cell the officers deliberated on what she was to be charged with, demonstrating little

knowledge on what was relevant to a charge of elder abuse. Id.

Ms. Thomas was denied a phone call to an attorney, an attorney was denied access to her,

and bail was set for $3,000. Id. at ¶ 27.  Her hands were shackled as she was transferred from C-

11 to South Boston, and then from South Boston to Dorchester Court by paddy wagon in the morning. Id. While she was set to be arraigned, authorities became aware of the video of her arrest and so the arraignment was postponed for two weeks. Id. She was released from custody but told to stay away from the home she lived in with her two minor sons for the two weeks until the arraignment. Pl.'s Sub. Compl. ¶ 28. On the date of arraignment, the video was played and the district attorney and judge concluded that Ms. Thomas could not be arraigned on any of the filed charges. Id.

Ms. Thomas's quality of life has declined since the incident of brutality at the hands of the Boston Police. Id. at ¶ 29. She entered therapy for treatment of her post-traumatic stress syndrome shortly after and continues to receive treatment to this day. Id. As a registered nurse, Ms. Thomas's personal and professional reputation has seriously declined as a result of the incident. Pl.'s Sub. Compl. ¶ 23. She and her children suffer from constant fear of the police and no longer feel safe in their home. Id. at ¶ 30.

Ms. Thomas seeks compensatory damages, punitive damages, and legal costs from Defendants for discrimination and violation of 42 U.S.C. § 1983, assault and battery, intentional infliction of emotional distress (IIED), NIED, false arrest, false imprisonment, and negligent training and/or supervision. Id. at ¶ 61.

## II.   STANDARD OF REVIEW

An affirmed principle of Massachusetts law is that the court must accept as true the allegations in the complaint and any inferences that may be drawn in the plaintiff's favor. Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991). So long as those facts and inferences drawn in favor of the plaintiff "plausibly suggest an entitlement to relief," the court must deny a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Here, the Plaintiff has

provided more than mere labels and conclusions or a formulaic recitation of the elements. Id. at 545. Furthermore, the Defendants have failed to show that the Plaintiff cannot prove any set of facts that would entitle her to the relief requested in her Substitute Complaint. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

III.    ARGUMENT

A.  Count I of Plaintiff's Complaint Successfully Alleges a <u>Monell</u> Claim Based on the Single Decision of a Final Policymaker and His Ratification of a Subordinate's Unconstitutional Action

With regards to the Boston Police Department's liability, as per Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978) a local government may be sued under § 1983 "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Such an official policy:

[M]ay take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amounting to a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

4

City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) and City of Canton, Ohio v.

Harris, 489 U.S. 378, 388-91 (1989).  An important point to state here is that the

municipality can be liable whether the "policy" established by the final decisionmaker is

a single event or action.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

With respect to the Plaintiff's case, the third and fourth theories listed above are most

applicable.  Regarding the elements that the Plaintiff must demonstrate to show liability

under those two "final policymaking" theories, the United States Supreme Court

emphasized them in Praprotnik after they were handed down by Justice Brennan in

Pembaur

First, "municipalities may be held liable under § 1983 only for acts for which the

municipality itself is actually responsible, 'that is, acts which the municipality has

officially sanctioned or ordered.'"  Praprotnik, 485 U.S. at 123.  Here, Sergeant Smith

gave an order to Officers Hedderman and Cavanaugh to arrest and charge the Plaintiff

with elder abuse without probable cause for the crime, or any crime for that matter.  Pl.'s

Sub. Compl. ¶ 32.  Since the sergeant is an employee of the government superior to the

officers, it is clear that the actions toward the Plaintiff were officially sanctioned.  There

was no evidence that the officers knew the elements of the crime of elder abuse and even

deliberated over what to charge her with while at the precinct.  Pl.'s Sub. Compl. ¶ 25.

This is further evidence that such acts were officially ordered.

"Second, only those municipal officials who have 'final policymaking authority'

may by their actions subject the government to § 1983 liability.  Id.  The determination of

whether an individual is a final policymaker involves a demonstration that "a deliberate

choice to follow a course of action [was] made from among various alternatives by the

official or officials responsible for establishing the final policy with respect to the subject

matter in question." Pembaur, 475 U.S. at 483.  Here, Sergeant Smith had the option of

advising his officers to simply defuse the situation and to not arrest Ms. Thomas since

they did not witness her commit a crime and had no probable cause to believe she had

previously committed a crime.  Instead, he made the deliberate choice to break the law

and violate her constitutional rights under the Fourth Amendment.

"Third, whether a particular official has a 'final policymaking authority' is a

question of *state law*." Id.  "Courts must look to state law, including 'valid local

ordinances and regulations,' for descriptions of the duties and obligations of putative

policymakers in the relevant area at issue." Walden v. City of Providence, 596 F.3d 38,

56 (1st Cir. 2010) (quoting Praprotnik, 485 U.S. at 125.)  In this case, the applicable

regulations would be the Boston Police Department Rules and Procedures which outline

the duties of sergeants among other positions in the department.  Sergeant Smith had

"final policymaking authority" in the area of supervising and sanctioning arrests, which

he obtained from Rule 104, § 3 of the Boston Police Department Rules and Procedures,

stating that a sergeant "[i]nterprets and explains law and administrative orders to

subordinates and ensures their compliance . . . [e]nsures that subordinates operate within

the law by requiring that they protect the rights of complainants, arrested persons, and

criminal suspects."

"Fourth, the challenged action must have been taken pursuant to a policy adopted

by the official or officials responsible under state law for making policy *in that area* of

the city's business." Id.  "Where a policymaking official exhibits deliberate indifference

to constitutional deprivations caused by subordinates, such that the official's inaction

constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city "policy or custom" that is actionable under § 1983.'" City of Canton v. Harris, 489 U.S. 378, 388 (1989).  Sergeant Smith was deliberately indifferent to the unconstitutional actions of his subordinates when he explicitly approved of the arrest of the Plaintiff for elder abuse without probable cause as to that crime.  Pl.'s Sub. Compl.  ¶ 18, 21-22.

Thus, the Boston Police Department is liable under the Monell theory for the violations of the Plaintiff's Fourth Amendment rights because of the single decision of Sergeant Smith to ratify Officers Hedderman and Cavanaugh's arrest absent probable cause.

**B. Plaintiff Has Alleged Sufficient Facts to Establish a Claim for NIED Against the City in Count 4 of the Complaint**

The actions of Officers Hedderman and Cavanaugh do not fall within the required criteria for a § 10(b) exception to the Massachusetts Tort Claims Act.  "The first step in deciding whether a plaintiff's claim is foreclosed by the discretionary function exception of § 10(b) is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow." Harry Stoller and Co. v. City of Lowell, 412 Mass. 139, 141 (1992).  "The second . . . step is to determine whether the discretion that the actor had was that kind of discretion for which § 10(b) provides immunity from liability." Id.  As stated in Whitney v. Worcester, not all acts that require the exercise of judgment automatically acquire governmental immunity because "the performance of all functions involves the exercise of discretion and judgment to some degree." 373 Mass. 208, 219 (1977).  Moreover, "discretionary actions and decisions that warrant immunity must be

based on considerations of public policy." <u>United States v. Gaubert</u>, 499 U.S. 315, 323 (1991).

In this case, the first step of the test is not met because the officers did not have any considerable discretion as to their course of action. <u>Harry Stoller and Co.</u>, 412 Mass. at 142. Plaintiff's case is similar to <u>Irwin v. Ware</u>, where the Massachusetts Supreme Judicial Court held that a police officer was not engaging in a discretionary function when deciding whether to arrest an intoxicated motorist because it had already been decided by the legislature. 392 Mass. 745, 753 (1984). Here, the officers were engaging in a non-discretionary activity, as the officer in <u>Irwin</u> was, because they should have been relying on guidelines set forth by the police department and legislature on how to respond to an emergency and execute an arrest. This includes elements of a constitutional arrest such as the reading of Miranda rights, which were absent in the Plaintiff's arrest. A lack of discretion available to Officers Hedderman and Cavanaugh is further demonstrated by the fact that they called Sergeant Smith to determine how they were to deal with the Plaintiff.

As for the second prong of the test, the officers were not engaging in a policymaking or planning activity and so their actions do not fall under the § 10(b) exception. <u>Harry Stoller and Co.</u>, 412 Mass. at 142. Defendants cite <u>Sena v. Commonwealth</u> as supporting their argument that the actions of the officers were discretionary functions. 417 Mass. 250 (1994). However, their argument fails because they have incorrectly applied the case by failing to consider the footnote to their quoted passage. Although <u>Sena</u> does state that investigating potentially criminal activity and seeking arrest warrants may be discretionary, it also recognizes that some aspects of the investigatory process are not

included in the discretionary function exception. <u>Sena</u>, 417 Mass. at 256 n.5. "For example, where the conduct of a defendant police officer in investigating a crime or in seeking a warrant violates officially established departmental procedures, that conduct likely would not be protected." <u>Id.</u> Here, Officers Hedderman and Cavanaugh made racially insinuating comments to the Plaintiff, ripped beads and hair out of her head, broke her gold bracelet, and bruised her wrist and ankles by using excessive force. Pl.'s Sub. Compl. ¶ 24, 26. In addition to the failure to read the Plaintiff her Miranda rights, they carried out the arrest absent probable cause for the crime of elder abuse. <u>Id.</u> at ¶ 24. Such actions certainly violate Boston Police Department investigatory and custodial procedures.

Although mental distress on its own is insufficient for a showing of NIED, there has been a broadening of the physical manifestation requirement to the tort. In <u>Sullivan v. Boston Gas Co.</u>, the Massachusetts Supreme Judicial Court expanded the scope of physical symptoms indicating objective evidence of emotional distress. 414 Mass. 129, 139-40 (1993). This was in response to the District of Massachusetts' holding in <u>Anderson v. W.R. Grace & Co.</u> that physical damage caused by the NIED such as headaches and diarrhea, need not be "immediately apparent." 628 F.Supp. 1219, 1227 (D. Mass. 1986). Although medical testimony is required to make a showing, the medical expert "need not have observed an actual external sign of physical deterioration." <u>Sullivan</u>, 414 Mass. at 138. Here, the Plaintiff has been dealing with physical symptoms as a result of her diagnosis of post-traumatic stress disorder that she continues to seek the aid of professional therapy for. Pl.'s Sub. Compl. ¶ 29.

**C. Plaintiff Has Presented Her Claims Contained in Counts 8 and 9 in Accordance**

with M.G.L. c. 258, § 4 as per the <u>Gilmore</u> Test

Under M.G.L. c. 258, § 4, a claimant must present its claim in writing to the executive officer of a public employer within two years after the date upon which the cause of action arose. Furthermore, the presentment must occur "in strict compliance with the statute. <u>Weaver v. Commonwealth,</u> 387 Mass. 43, 47 (1985). However, such compliance is more concerned with "whether presentment has been made to the proper executive officer (*proper party notice*) in a timely fashion (*timeliness*) than with the content of the presentment (*adequacy of content*). <u>Martin v. Commonwealth,</u> 53 Mass. App. Ct. 526, 529 (2002). Nevertheless, <u>Gilmore v. Commonwealth</u> outlines the test for the sufficiency of the content of a presentment letter, stating that "'a presentment letter should be precise in identifying the legal basis of a plaintiff's claim' "and must" 'not [be] so obscure that educated public officials . . . find themselves baffled or misled with respect to [whether] a claim' "is being asserted" 'which constitutes a proper subject for suit' "under G.L. c. 258." <u>Id.</u> (quoting 417 Mass. 718, 723 (1994)). In addition, "the presentment requirement is not intended to demand such rigid particularization as to reincarnate sovereign immunity and bar legitimate claims for failing to invoke perfectly the correct 'Open Sesame.'" <u>Vasys v. Metro. Dist. Comm'n.,</u> 387 Mass. 51, 57 (1982).

In <u>Holden v. Barry,</u> the plaintiff was permitted to proceed against the defendant on the NIED and negligence claims because: the complaint alleged negligence, negligence could be "inferred by an educated public official," and the presentment letter was "not misleading." 501 F.Supp.3d 11, 17 (D. Mass. 2020). Like in <u>Holden,</u> here the Plaintiff's letter of presentment was timely filed and was very detailed, outlining a statement of the facts sufficient for the police commissioner to be able to infer a general

claim of negligence. See generally Pl.'s Present. Letter.  Moreover, the fact that the letter states that damages are "not limited to" the six causes of action that it goes on to list, is also sufficient evidence of the capacity for an inference of negligence. Id. at ¶ 3.

## IV.     CONCLUSION

With respect to the preceding arguments, the Plaintiff, Ms. Tricia Thomas, requests that this Honorable Court deny the Defendant's motion to dismiss the claims averred in Plaintiff's Substitute Complaint.

Plaintiff,
Tricia Thomas

By her Attorneys,
Cohen Law Group

Herbert S. Cohen
BBO# 089180
Cohen Law Group
500 Commercial Street, #4r
Boston, MA  02109
617-523-4552
hscohenlaw@gmail.com

11

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 17, 2021.

_6/17/21_

Date

/s/ Herbert S. Cohen

Herbert S. Cohen