UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:21-cv-10596-IT

TRICIA THOMAS )
    Plaintiff, )
)
v. )
)
CITY OF BOSTON, )
BOSTON POLICE DEPT., )
OFFICER MARTIN J. HEDDERMAN, Individually )
and as employee of BOSTON POLICE DEPT., )
OFFICER BRENDAN E. CAVANAUGH, Individually )
and as employee of BOSTON POLICE DEPT., )
LIEUTENANT SEAN P. SMITH, Individually )
and as employee of BOSTON POLICE DEPT., )
    Defendants. )

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S LIEUTENANT SEAN P. SMITH, MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

NOW COMES the Plaintiff, Tricia Thomas (hereinafter "Thomas") requesting that this Court deny the Defendant, Sean P. Smith (hereinafter "Lt. Smith") motion for judgement on the pleadings pursuant to Fed. R. Civ. P. 12(c). Thomas has sufficiently alleged against Lt. Smith the following counts: (1) a violation of 42 U.S.C. §1983 (Count I); (2) Intentional Infliction of Emotional Distress (Count III), (3) Negligent Infliction of Emotional Distress (Count IV); (4) False arrest (Count V); (5) False imprisonment (Count VI); and (6) Negligent Training and Supervision (Counts VIII and IX).

Thomas submits a memorandum of law in support of this motion requesting that this Honorable court deny the Lt. Smith's Motion for Judgement on the Pleadings.

**I.    FACTS AND BACKGROUND**

1

The Plaintiff, Tricia Thomas, is a single mother who owns a dwelling at 15 Centerville Park, Boston, MA. Pl.'s Sub. Compl. ¶ 11. On Mother's Day of 2018 (May 13), she called the police to report a disturbance caused by her brother who was trying to gain unwanted access to her unit. Id. at ¶¶ 11, 13. Officers Hedderman and Cavanaugh arrived and began to make racially prejudicial comments to Ms. Thomas, such as: "You don't own no house," and "How you own this house?" Id. at ¶ 14.

Later in the day, Ms. Thomas's sister and brother-in-law attempted to gain unwanted access to Ms. Thomas's unit, threatening her with grave physical harm if she failed to give acess. Id. at ¶ 15. Despite Ms. Thomas's rejection of their entry due to feelings of imminent danger that they imposed, Ms. Thomas's sister phoned the police and lied, stating that there was a "black woman on the porch with a gun." Pl.'s Sub. Compl. ¶ 16. Officers Hedderman and Cavanaugh returned to the dwelling and immediately pushed her through the front door. Id. at ¶ 17. After this they carried Thomas outside, placed her face down on the ground, and handcuffed her in front of her two minor sons on Mother's Day. Id. at ¶ 20.

The incident was captured on video and shows the officers acting with excessive force and arresting Ms. Thomas on a charge of elder abuse without probable cause. Id. at ¶ 18, 22. The officers did so after phoning Sergeant Smith who advised them to arrest her on that charge. Pl.'s Sub. Compl. ¶ 21-22. Ms. Thomas was not read her Miranda rights at any point in time. Id. at ¶ 24. The use of excessive force continued when she was brought to the C-11 precinct and placed in a cell where the officers ripped beads and hair out of her head, broke her gold bracelet and caused bruising to her wrist and ankles. Id. at ¶ 24, 26. The officers again contacted Sergeant Smith when it was time to process Ms. Thomas. Id. at ¶ 25. After placing her back in her cell the officers deliberated on what she was to be charged with, demonstrating little

knowledge on what was relevant to a charge of elder abuse or why she was arrested and incarcerated. Id.

Ms. Thomas was denied a phone call to an attorney, an attorney was denied access to her, and bail was set for $3,000. Id. at ¶ 27. Her hands were shackled as she was transferred from C-11 to South Boston, and then from South Boston to Dorchester Court by paddy wagon in the morning. Id. While she was set to be arraigned, authorities became aware of the video of her arrest and so the arraignment was postponed for two weeks. Id. She was released from custody but told to stay away from the home she lived in with her two minor sons for the two weeks until the arraignment. Pl.'s Sub. Compl. ¶ 28. On the date of arraignment, the video was played and the district attorney and judge concluded that Ms. Thomas could not be arraigned on any of the filed charges. Id.

Ms. Thomas's quality of life has declined since the incident of brutality at the hands of the Boston Police. Id. at ¶ 29. She entered therapy for treatment of her post-traumatic stress syndrome shortly after and continues to receive treatment to this day. Id. As a registered nurse, Ms. Thomas's personal and professional reputation has been seriously damaged as a result of the incident. Pl.'s Sub. Compl. ¶ 23. She and her children suffer from constant fear of the police and no longer feel safe in their home. Id. at ¶ 30.

Ms. Thomas seeks compensatory damages, punitive damages, and legal costs from Defendants for discrimination and violation of 42 U.S.C. § 1983, assault and battery, intentional infliction of emotional distress (IIED), NIED, false arrest, false imprisonment, and negligent training and/or supervision. Id. at ¶ 61.

II. **STANDARD OF REVIEW**

A rule 12(c) motion is viewed in the same manner as 12(b)(6) motion with the only difference is that a 12(c) motion considers the pleadings as a whole. See Aponte-Torress v. Univ. of Puerto Rico, 445 F.3d 50. 54 (1st Cic. 2006). Either motion will not affect the analysis inasmuch as the two motions are ordinarily accorded much the same treatment. Id.

The pleading standard in Federal Rule of Civil Procedure 8(a)(2), does not require "detailed factual allegations," but it demands more than the defendant-unlawfully-harmed-me accusation. Ashcroft v. Iqbal 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face. Id, at 679. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id at 679. In considering a motion to dismiss, the Court is obliged to accept the Plaintiff's well pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor. See. Copperman v. Individual, Inc., 171 F.3d 43,46 (1st. Cir. 1999).

## II. ARGUMENT

### A. Plaintiff has sufficiently pleaded counts 1, 3, 5 and 6 to allow this court to Reasonably infer Plaintiff is entitle to relief against Lt. Smith.

#### 1. There was not sufficient probable cause for Plaintiff's arrest and thereby, Thomas's §1983 (count I), False Arrest (count 5), and False Imprisonment (count 6) claims were sufficiently pleaded.

Lt. Smith asserts that Thomas's false arrest, false imprisonment and §1983 claim should be dismissed because probable cause existed to arrest the Plaintiff. Lt. Smith did not have probable cause to order Hedderman and Cavanaugh to arrest Plaintiff for the following reasons.

Determining whether an officer had probable cause to arrest an individual entails examining the events leading up to the arrest, and then deciding whether these historical facts, viewed from the standpoint of an objective reasonable police officer amounts to probable cause. Md v. Pringle, 540 U.S. 366, 371 (2003). The degree of certainty "falls somewhere between bare suspicion and what would be needed to justify conviction." Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005). Moreover, the fourth amendment demands "reasonably trustworthy facts and circumstances that would enable an objectively reasonable police officer to believe that the arrestee has committed a crime. Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 10 (1st. Cir. 2004).

Police officers may rely upon the credible complaint by a victim to support the finding of probable cause. Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004). However, the First Circuit recognized that probable cause does not automatically exist simply because police act on information provided by an alleged victim of a crime. B.C.R. Transport Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984). When there are indicia of unreliability, further investigation to corroborate an alleged victim's complaint may be necessary to find probable cause. Fraser v. Massachusetts Bay Transportation Authority, No. CA 20-11654-FDS, 2021 WL 2458203, at *8. Whether or not probable cause exists in any given case invariably depends on the particular facts and circumstance of that case, a question to be resolved by the trier of fact. B.C.R. Transport Co. 727 F.2d at 10.

The court came to a similar conclusion in Lewis v. Kendrick, 944 F.2d 949 (1st Cir. 1991), that unreliable information does not establish probable cause. In this case the alleged victim stated to police that her neighbor had threatened her with a knife. Lewis, 944 F.2d at 952. After hearing the victim's complaint, the officer immediately arrested the neighbor without

5

questioning anyone else at the scene, including the neighbor, and without searching for the knife. Id. Police failed to take the opportunity to establish probable cause by searching for the knife or questioning the many witnesses. Id. The court concluded that based on those facts, "particularly that the police saw no knife, and without questioning others at the scene, probable cause did not exist and therefore, the plaintiff's claims that pertain to the false arrest are not dismissed. Id.

The within case is similar to the above case. The alleged victim, sister, called the police falsely alleging that Thomas had a gun on the porch. When the police arrived, the scene was calm and there was no gun in sight. The police did not search for a gun nor did they question the many witnesses at the scene. Instead the police used unreliable information without any attempt to corroborate said information. The information is unreliable because there is a family dispute in Thomas's family and the police had knowledge of said dispute because they responded to a call earlier that day. For these reasons, the police did not have probable cause to arrest Thomas because they used zero corroborating evidence to verify the well-known unreliable information.

The court in Fraser v. Massachusetts Bay Transportation Authority, No. CA 20-11654-FDS, 2021 WL 2458203, found that an unreliable witness's complaint was sufficient for the officer to find probable cause. The victim alleged that Fraser sexually assaulted her on a bus. Fraser at 3. Despite the victim being a recidivist criminal, the police officers found no other circumstances that would raise a reasonably prudent officer to question the reliability of said accusation. Id. For this reason, the court found that the police officers had probable cause to arrest Fraser.

The within case is not similar to the case above. The police officers had substantial amounts of information that would allow a reasonable prudent police officer to question the reliability of the complaining victim which does not support probable cause. B.C.R. Transport

Co. v. Fontaine, 727 F.2d 7, 10 (1984). First, the police were aware that there was a lawsuit concerning the ownership of the house, which any reasonably prudent police officer would realize there is an internal dispute amongst the family and more information is required to obtain probable cause. The officers' knowledge concerning the ownership of the house is evident because the police were making racial remarks to Plaintiff such as "you don't own no house". Secondly, Thomas called the police earlier and the same officers responded. A reasonably prudent police officer would suspect that this call by her sister is to retaliate against Thomas for the earlier call to the police. Thirdly, when the officers arrived the scene was very calm, evidence by a video. A reasonably prudent police officer would realize that if a gun was present, then the behavior by bystanders would be much more chaotic and fearful. Lastly, a reasonably prudent police officer would have realized that Thomas is a respectable nurse with her children at the scene and that it is highly unlikely that Thomas would be waiving a gun around putting her children in danger.

Accordingly, there was no probable cause to arrest Thomas and therefore, Thomas's false arrest, false imprisonment, and § 1983 claims should not be dismissed against Lt. Smith because the officers called Lt. Smith requesting some guidance on what to do and he instructed the officers to arrest the Plaintiff, despite there being no probable cause. Lt. Smith did not inquire or care about what probable cause there was to arrest Thomas. The facts alleged support that Lt. Smith instructed the officers to arrest her because the purpose of the call was to get advice from a supervising officer, in this case Lt. Smith. For these reasons, the court must deny Lt. Smith's request to dismiss the above claims.

    **2.**     **Plaintiff has sufficiently pleaded intentional infliction of emotional Distress.**

The elements of intentional infliction of emotional distress are "(1) the [defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe. Polay v. McMahon, 468 Mass. 379, 385 (2014). The defendant's conduct must be extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community. Keenan v. Wells Fargo Bank, N.A., 246 F. Supp. 3d 518, 527 (D. Mass. 2017).

Instances of unlawful arrest can support an intentional infliction of emotional distress claim when the officer has engaged in "extreme and outrageous conduct" toward the plaintiff prior to, or in the course of the arrest. McDonald v. City of Boston, 344 F. Supp. 3d 429, 443 (D. Mass. 2018).

In the case of Barobosa v. Conlon, 962 F. Supp. 2d 316 (2013), the court found that three plaintiffs, two arrested with probable cause and one without probable had a claim against the officers for intentional infliction of emotional distress. Plaintiff 1 was handcuffed and then thrown against a wall, thrown outside onto a porch and dragged to a police cruiser. Barbosa, F.Supp. 2d at 324. Plaintiff 2 was handcuffed, dragged by her arm and hair, and pulled down the porch steps to the police cruiser. Id at 324. Upon arrival at the police station, Plaintiff 1 and 2 were verbally abused about their ethnicity and denied medical treatment for injuries caused by the excessive police force. Id at 325. Plaintiff 3 arrived at the police station to check on Plaintiff 1 and 2. Id at 325. The police demanded Plaintiff 3 leave and when she rightfully refused, the police got physical with her and arrested her without probable cause. Id at 325. The court found in combination with the excessive force used, denial of medical treatment, and comments like

8

"go back to your country, and "immigrant bitch", Plaintiffs sufficiently pleaded intentional infliction of emotion distress. Id at 336.

In the within case, Plaintiff alleges similar facts to Boylston v. Conlon that sufficiently pleads intentional infliction of emotional distress. First, she was arrested without probable cause making it an unlawful arrest, in which may be deemed extreme and outrageous conduct. McDonald v. City of Boston, 344 F. Supp. 3d 429, 443 (D. Mass. 2018). Lt. Smith knew there was no probable cause to arrest Thomas for elder abuse because the officers relied on zero credible information to charge her with said crime. Secondly, racial slurs were said to Thomas by the police officers. These racial slurs were intended to poke fun at how Thomas a black woman speaks. Next, the police officers subjected Thomas to excessive force by pushing her down to the ground, slamming her face into the ground, and aggressively handcuffing her while she was showing no signs of resistance. Lastly, the police officers unlawfully arrested her in front of her minor children and entire family. Before instructing his employees to arrest Thomas, Lt. Smith should have inquired more about the scene because he was not there and therefore, was not qualified to make that decision to arrest Thomas. These facts satisfy the sufficient pleadings of intentional infliction of emotional distress.

Therefore, Lt. Smith was acting in concert with Hedderman and Cavanaugh and was the driving force to falsely arrest and charge Thomas. Therefore, Lt. Smith instructing his officers to conduct a false arrest is a sufficient allegation to plead intentional infliction of emotional distress.

    3.    **Lt. Smith is not protected by qualified immunity.**

The doctrine of qualified immunity protects government officials from damages under civil liability insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 989, 994 (2009). Qualified immunity protects an officer from suit when a reasonable decision in the line of duty ends up being a bad guess – in other words, it shields from liability all but plainly incompetent or those who knowingly violate the law. Justiano v. Walker, 986 F.3d 11, 26 (1st Cir. 2021).

To defeat a defense of qualified immunity, a plaintiff must show (1) that the defendant violated the plaintiff's federal rights and (2) that these rights were so clearly established that a reasonable officer should have known how they applied to the situation at hand. Id. A police officer must have objectively reasonable grounds of probable cause in order to be shielded from civil liability pursuant to qualified immunity. Ricci v. Urso, 974 F. 2d 5, 8 (1st. Cir. 2007). This standard is met as long as probable cause is at least arguable. Ricci, 974 F. 2d at 8.

In the case of Ricci v. Urso, 974 F. 2d 5, (1st Cir. 2007), the court found that the police did not achieve qualified immunity to shield them from civil liability because they arrested Ricci without probable cause. The police pointed to only two facts that offered them an objectively reasonable basis for fatally believing that probable cause existed. Ricci, 974 F. 2d at 7. The first fact is that they found an address book with the Ricci's name in it. The court noted that many people keep address books in their home and Ricci's name being in an address book gives no indication of criminal activity. Id at 7. Secondly, the police recorded Ricci's voice while he was in custody and compared it to a previous recording of whom the police believed to be the suspect. Id. The court found the police used unreliable tape recordings and thus, could not use the recordings as a sufficient basis for probable cause. Id. Therefore, the police officers did not have objectively reasonable grounds for probable cause and thus were not protected by qualified immunity.

In the within case, Lt. Smith and the other Police officers pointed to unreliable facts that do not give a reasonable belief of probable cause nor make the presence of probable cause arguable. Lt. Smith obtained zero information to establish probable cause to order the arrest of Thomas. The arresting officers, who are defendants, were determined to arrest Thomas but knew they did not have probable cause. They then called Lt. Smith for his guidance. Lt. Smith who had zero knowledge of the scene nor did Lt. Smith inquire about any allegations of elder abuse. Lt. Smith solely used the unreliable and false statement about Thomas carrying a gun to instruct the officers to arrest Thomas without probable cause. This unfortunately makes no sense and leads a reasonable person to believe that probable cause was not present to arrest Thomas for elder abuse.

Therefore, due to the following alleged facts: Lt. Smith not being present at the scene, Lt. Smith having zero credible evidence of elder abuse, and understanding the history of the family dispute, probable cause is not arguable and Lt. Smith is not protected by qualified immunity.

### 4. Lt. Smith is not protected by "common law" immunity because M. G. L. A. C. 258 § 10 has effectively abolished common law immunity.

Sovereign immunity was a judicially created common law concept and judges felt it was necessary to provide piecemeal exceptions to avoid unjust results when citizens were entitled to recover from government employees and subsequently courts requested that the legislature take action to abolish the common law doctrine governmental immunity from tort liability. Morrissey v. New England Deaconess Ass'n—Abundant Life Communities, Inc.. 458 Mass. 580, 587 (year). As consequence of the courts constant criticism and judicial made exceptions to common law immunity, the legislature enacted M. G. L A. c. 258 S 10, thereby allowing Plaintiffs with

11

valid tort claims to recover damages against the Commonwealth and other public employees. Morrissey, 458 Mass at 588.

Therefore, Lt. Smith is unable to assert common law immunity because M. G. L. A c. 258 §10 has abolished said immunity and it is improper for Lt. Smith to include such defense in his pleadings.

## CONCLUSION

Tricia Thomas went from spending a beautiful day with her children on Mother's day, to being racially insulted, slammed against the ground, and unjustly arrested in the presence of her children. In light of the court considering Thomas's allegations as true, Thomas sufficiently pleaded claims in which she is entitled to relief. Thomas respectfully requests this court to deny defendant's Motion for Judgement on the Pleadings.

Plaintiff reserves the right to supplement and/or amend this motion.

Respectfully Submitted by,
Plaintiff Tricia Thomas,
By her Attorneys,

Herbert S. Cohen, Esq.
Cohen Law Group
BBO #089180
500 Commercial St., Ste. 4R,
Boston, MA 02109

(617) 523-4552
hscohenlaw@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 16, 2021.

Nieve Anjomi, Esq.
City Hall, Room 615
Boston, MA 02201

Date: 9/16/21

_____
Herbert S. Cohen, Esq.